UNITED STATES of America,
Plaintiff,

v.

Orlando Rivera FUENTES [5], Carlos I. Arce–López [13], Carlos Camacho–Santiago [14], Rafael Renovales–Vazquez [16], Ramon L. Nuñez–Freytes [21], Annette Cancel–Lorenzana [22], Defendants.

Criminal No. 12–413 (FAB).

United States District Court,
D. Puerto Rico.

Oct. 22, 2013.

Mariana E. Bauza, Maritza Gonzalez–Rivera, Olga B. Castellon–Miranda, United

States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court are six defendants' motions for relief from joinder, the United States's response, and defendants' replies. (Docket Nos. 732, 804, 819, 836, 911, & 927.)

### I. Background

On May 24, 2012, a grand jury returned a two count indictment against twenty defendants, alleging a conspiracy to possess with the intent to distribute cocaine—in violation of 21 U.S.C. §§ 841 & 846 and 18 U.S.C. § 2—between 1999 and 2009. (Docket No. 3.) The conspiracy as alleged involved smuggling cocaine through luggage checked into American Airlines flights from the Luis Muñoz Marin International Airport (LMMIA) in San Juan, Puerto Rico to places in the East Coast of the United States. *Id.* On March 15, 2013, a grand jury returned a superseding indictment with an additional count against one existing defendant (Carlos Arce–Lopez) and two new defendants (Annette Cancel–Lorenzana and Ramon L. Nuñez–Freytes. Docket No. 518.) Count three of the superseding indictment charged these three defendants with conspiracy to commit money laundering. *Id.* at p. 7.

Count three states that the object of the conspiracy was "to conceal and disguise drug trafficking proceeds derived by [1] Carlos I. Arce Lopez ...; to use drug trafficking proceeds to promote the drug trafficking activities of Carlos I. Arce Lopez ...; and to avoid any reporting of

drug trafficking proceeds." *Id.* at p. 9. The count also specifies that "manners and means of the conspiracy" involved the conspirators "mak[ing] cash payments and money wire transfers to pay for controlled substances to be imported *from the Dominican Republic to Puerto Rico.*" *Id.* (Emphasis supplied) Count three makes no specific reference to the conspiracy to import drugs to the United States using luggage checked into American Airlines flights that is alleged in counts one and two. *See id.*

On that same date, March 15, 2013, Arce–Lopez and Nuñez–Freytes were indicted with Omar Giraud Piñeiro and Aureliano Giraud Piñeiro[1] in criminal case number 13–148 for a separate drug trafficking conspiracy. (Docket No. 732–1.) This indictment alleged a conspiracy to import controlled substances between 2008 and 2009 *from the Dominican Republic to Puerto Rico. Id.* (Emphasis supplied)[2] The initial criminal complaint for case number 13–148 referenced an investigation by Homeland Security Investigations agents into a "money laundering organization that was moving large amounts of money out of Puerto Rico to finance drug smuggling ventures." (Docket No. 732–2 at ¶ 3.) The complaint states that authorities seized $192,000.00 belonging to the criminal organization, and the money was believed to be "destined as partial payment to finance a shipment of 1,000 kilograms of cocaine *from [the] Dominican Republic to Puerto Rico.*" *Id.* at ¶ 4. (Emphasis supplied)

A third separate indictment, Criminal No. 12–736(DRD), returned on October 11, 2012 charged defendant Arce–Lopez with possession of a firearm by a felon and possession of a stolen firearm (hereinafter

---

1. These two defendants are not indicted in this case.

2. This case was initiated pursuant to criminal complaint number 13–259, and was subsequently merged into criminal case number 13–148. (Docket No. 732–2.)

"the firearms charges"). (Criminal No. 12–736(DRD), Docket No. 614 at p. 2.) Following a government motion pursuant to Local Rule 107, the firearms case was consolidated with this case on April 23, 2013. (Docket No. 615.) Rivera–Fuentes subsequently moved for reconsideration of the consolidation, which the Court denied. (Docket Nos. 616 & 617.) Rivera–Fuentes now asks the Court to sever the firearms charges from the conspiracy counts in case number 12–413. Because the Court has already reconsidered this argument, it declines to revisit it for a third time here. Accordingly, Rivera–Fuentes, Camacho Santiago, and Renovales–Vazquez's motion for severance of the firearms charges against Arce–Lopez is **DENIED.**

## II. Discussion

Defendants Arce–Lopez, Nuñez–Freytes, and Cancel–Lorenzana now move for severance of count three pursuant to Rule 8(b) or, in the alternative, pursuant to Rule 14. Defendants Rivera–Fuentes, Camacho Santiago, and Renovales–Vazquez move for severance of count three and Arce–Lopez's firearms charges on the same grounds, as well as on speedy trial grounds. For the reasons that follow, the Court **GRANTS** the defendants' motion for severance of count three pursuant to Rule 8(b). Accordingly, the Court does not address the parties' Rule 14 and speedy trial arguments for severance. As mentioned above, the Court **DENIES** Rivera–Fuentes, Camacho Santiago, and Renovales–Vazquez's motion for severance of the firearms charges.

### A. Rule 8(b) Joinder Standard

 The parties agree that Rule 8(b) governs joinder of defendants and offenses in cases involving multiple defendants. *United States v. Natanel,* 938 F.2d 302, 306 (1st Cir.1991). Pursuant to that rule,

"the government may charge serial transactions, and indict persons jointly, on the basis of what it reasonably anticipates being able to prove against the defendants collectively, measured as of the time the indictment is handed up." *Id.* (internal citations omitted). Joinder is proper where two or more defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). "A rational basis in fact, sufficient to warrant joinder, must be discernible from the face of the indictment." *United States v. Boylan,* 898 F.2d 230, 245 (1st Cir.1990) (internal citations omitted). "[J]oinder is proper as long as there is some common activity binding the objecting defendant with all the other indictees and that common activity encompasses all the charged offenses." *Natanel,* 938 F.2d at 307. In order to be part of the "same series of acts or transactions," defendants must have known about and participated in acts that were part of an overall scheme. *United States v. Bledsoe,* 674 F.2d 647, 656 (8th Cir.1982). A defendant challenging joinder has the burden of persuading the trial court that a misjoinder has occurred. *Natanel,* 938 F.2d at 306. "The remedy for misjoinder is severance." *Id.* (internal citation omitted). In determining whether joinder is proper, the trial court "must balance its obligation to avoid prejudice that may result from joining multiple defendants against a policy favoring maximum trial efficiency." *United States v. Bledsoe,* 674 F.2d at 655.

### B. Count Three was Misjoined Pursuant to Rule 8(b)

██ ██ The Court concludes that under this standard, the joinder of count three is improper. The indictment charges two unrelated schemes: one a conspiracy to transport narcotics to the East Coast of

the United States using American Airlines flights (counts one and two), and the other a money laundering operation related to a conspiracy to transport narcotics from the Dominican Republic to Puerto Rico (count three). The only links between the two schemes apparent from the indictment are 1) the identity of one participant (Arce–Lopez), and 2) the fact that count three relates to a drug trafficking conspiracy. As to the first connection, "the presence of one overlapping member does not make two separate conspiracies part of the same series of acts or transactions." *United States v. Webb*, 827 F.Supp. 840, 841 (D.Mass.1993). As to the second link, the First Circuit Court of Appeals has stated that "mere similarity of acts, without more, cannot justify joinder." *Natanel*, 938 F.2d at 307. Not a single overt act or substantive offense alleged in the drug conspiracy counts relates in any meaningful way to the overt acts and substantive offenses alleged in connection with the money laundering conspiracy. The indictment is similarly devoid of any allegation that defendants—aside from Arce–Lopez—knew of the money laundering scheme.

The government does not point to any link between the money laundering scheme and the American Airlines drug conspiracy in the discovery or in the indictment. The government claims that the defendants overlooked sixty boxes of discovery that support the money laundering count, and claims that count three is connected to counts one and two because Arce–Lopez planned the activities charged in the money laundering count. As mentioned above, one common player is not sufficient grounds for joinder of two separate schemes. Moreover, the government does not respond to the defendants' argument that the money laundering count is related to a *different* drug conspiracy involving Arce–Lopez—that charged in case number 13–148. (*See* Docket No. 732–1.) Count

three specifically states: "It was part of the manner and means of the conspiracy that some of the co-conspirator would make cash payments and money wire transfers to pay for controlled substances **to be imported from the Dominican Republic to Puerto Rico.**" (Docket No. 518 at p. 9.) Count three makes no mention of a scheme to import narcotics to the East Coast of the United States, or to use American Airlines flights to do it.

Furthermore, defendants' exhibits support the contention that a money laundering investigation was conducted in connection with the drug conspiracy charged in case number 13–148. The criminal complaint initiating that case references a money laundering organization "that was moving large amounts of money out of Puerto Rico to finance drug smuggling ventures." (Docket No. 732–2 at p. 3.) Similarly, a Report of Investigation believed to be an interview of Nuñez–Freytes links the seizure of $192,000.00 to the drug conspiracy to import controlled substances from the Dominican Republic. (Docket No. 732–4). The indictment in this case does not suggest a link between counts three and the conspiracy charged in counts one and two, but rather a link between the money laundering allegations and the conspiracy charged in case number 13–148.

In sum, the indictment, on its face, does not supply a rational basis in fact for joinder of count three. Accordingly, defendants' motion to sever count three of the indictment is **GRANTED.**

**IT IS SO ORDERED.**