UNITED STATES of America, Appellee,

v.

Donald Lee MILLER, Appellant.

UNITED STATES of America, Appellee,

v.

Bruce Alden PATTERSON, Appellant.

Nos. 92–2887, 92–3110.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 18, 1993.

Decided June 16, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied in No. 92–3110
July 30, 1993.

Barry V. Voss, argued, Minneapolis, MN, for appellant Donald Miller.

Earl P. Gray, argued, St. Paul, MN, for appellant Bruce Patterson.

Jeffrey S. Paulsen, Asst. U.S. Atty., argued, Minneapolis, MN, for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

WOLLMAN, Circuit Judge.

Donald L. Miller and Bruce A. Patterson appeal from their convictions for conspiring to distribute, to possess with the intent to distribute, and to import into the United States in excess of 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846. We affirm.

## I.

Because a full recitation of the lengthy history of the conspiracy is unnecessary to our resolution of the issues on appeal, we set forth initially only a broad sketch of the facts and will include additional facts as necessary in the course of our analysis.

Miller and Patterson were two of the four main partners in a large and complex conspiracy that smuggled well over a ton of marijuana from Mexico and Arizona into Minnesota between 1986 and 1991. The conspiracy unravelled in late 1991 when one of the partners, Greg Rosenow, attempted to buy a load of marijuana from a source that the partners had not used for some time. Unbeknownst to Rosenow, in the intervening period the source had become a government informant. After he was arrested, Rosenow agreed to cooperate with the government and testify against his co-conspirators.

Based in part on Rosenow's information, the government obtained a multiple-count indictment against Miller, Patterson, Chris Parks, a driver for the partners, and Juan Rene Sainz–Ortega ("Johnny Sainz"), the partners' main marijuana source, who lived in Nogales, Arizona, on the border with Mexico.[1] Parks reached a plea agreement with the government and testified against his three co-defendants. Miller, Patterson, and Sainz elected to take their cases to trial and were given a joint trial in April 1992. Sainz did not appear for the trial and was tried *in absentia*. The jury convicted Miller and Patterson of conspiring to distribute and to possess with intent to distribute marijuana, but

it acquitted them on the indictment's substantive distribution count.

## II.

Miller challenges his conviction on the ground that the district court[2] erred in not granting a mistrial and not severing his trial from his co-defendants' based on the admission of an out-of-court statement made by codefendant Sainz.

In his opening statement, the Assistant United States Attorney (the "prosecutor") told the jurors that they would hear testimony that Sainz had told police officers after his arrest that he was in fact "the person who provided marijuana to people up here in Minnesota." The prosecutor later stated that Miller also had made a statement after his arrest, admitting that he had been involved in smuggling marijuana into Minnesota. At the close of the government's opening statement, counsel for Patterson objected on Sixth Amendment Confrontation Clause grounds and moved for a mistrial. Miller's counsel joined the motion. The district court denied the motion. Counsel did not ask for a limiting instruction, and none was given.

During the government's case, Special Agent Robert Bushman, a member of the Minnesota Bureau of Criminal Apprehension assigned to a federal Drug Enforcement Administration task force, testified that he had interviewed Sainz after his arrest in Arizona on December 16–17, 1991. He testified that Sainz had admitted "that he had supplied marijuana to persons in Minnesota." Counsel for Patterson objected to the statement as violating the Confrontation Clause, and the district court overruled the objection. Again, counsel did not ask for a limiting instruction, and none was given.

The decision whether to grant or deny a motion for mistrial or to sever the trial of multiple defendants is committed to the sound discretion of the district court. We will reverse only where we find an abuse of discretion resulting in clear prejudice.

---

1. Five other individuals connected to the conspiracy were indicted and tried in earlier cases. *See United States v. Bruce,* 984 F.2d 928, 929 & n. 1 (8th Cir.1993).

2. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

*United States v. Long,* 900 F.2d 1270, 1278 (8th Cir.1990).

In *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968), the Supreme Court held that the admission in a joint trial of a nontestifying co-defendant's confession expressly implicating the defendant violated the defendant's right under the Sixth Amendment to confront the witnesses against him, even if the trial court instructed the jury to consider the confession only against the co-defendant that had made the statement. In a more recent case, however, the Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). We have subsequently held that the Confrontation Clause is not violated where a defendant's name is replaced by a neutral pronoun and the redacted confession implicates the defendant only when connected with other evidence in the case. *See, e.g., United States v. Donahue,* 948 F.2d 438, 444 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1600, 118 L.Ed.2d 314 (1992); *United States v. Garcia,* 836 F.2d 385, 390 (8th Cir.1987); *but see United States v. Long,* 900 F.2d 1270, 1280 (8th Cir.1990) (*Bruton* violated where redacted confession and co-defendant's cross-examination of witness "led the jury straight to the conclusion that 'someone' referred to [the defendant]").

In the present case, we find that Sainz's confession was properly redacted to refer to generic "persons in Minnesota" so as not to "expressly implicate" Miller. *See Bruton,* 391 U.S. at 124 n. 1, 88 S.Ct. at 1622 n. 1. Moreover, we disagree with Miller's contention that the prosecutor's subsequent mentioning of Miller's confession during his opening statement directly connected Sainz's confession to Miller. Only when evidence concerning Miller's role in the conspiracy was introduced did the jury have a basis on which to conclude that Miller was one of the persons to whom Sainz was providing marijuana.

Miller argues, however, that the district court nonetheless violated his rights under the Confrontation Clause when the court, after overruling Miller's objections, failed to give a limiting instruction charging the jury to use Sainz's confession only against Sainz. The government counters that because counsel for neither Patterson nor Miller asked the court to give such an instruction, Miller has waived the issue on appeal, and we should review the failure to give a limiting instruction only for plain error. *See* Fed.R.Crim.P. 52(b). We need not decide whether defense counsel's objection to the admission of Sainz's confession by itself required the district court to give a limiting instruction or whether Miller has waived the issue by not specifically requesting a limiting instruction. Under either view we find that the error, if any, was harmless. *See United States v. Comeaux,* 955 F.2d 586, 590 (8th Cir.) (applying harmless error standard to alleged *Bruton* violation), *cert. denied,* — U.S. —, —, 113 S.Ct. 135, 387, 121 L.Ed.2d 89, 296 (1992); *Garcia,* 836 F.2d at 391 (same).

The evidence demonstrating Miller's involvement in the conspiracy was overwhelming. Rosenow testified at length regarding Miller's involvement in purchasing large loads of marijuana and transporting them back to Minnesota for distribution. Portions of Rosenow's testimony were corroborated by numerous other government witnesses, including individuals hired by the four partners to drive the marijuana loads from Arizona to Minnesota. These drivers testified that they sometimes had dropped off their cargo at one of Miller's body shops. Further corroboration came in the form of telephone records showing frequent calls between Miller, the other partners, drivers, and marijuana sources. Finally, the government introduced Miller's own confession. Miller admitted to law enforcement officials that he had been involved in distributing marijuana in Minnesota for several years. He also specifically told the officers about his involvement with two marijuana loads that had been intercepted by police in Utah, incidents con-

cerning which the jury heard other corroborating evidence.

### III.

Patterson challenges his conviction on double jeopardy grounds. On July 2, 1987, police officers arrested Patterson and a person named Gary Stephens at the Minneapolis/St. Paul Airport for bringing marijuana back from Arizona on an airline flight. A federal grand jury subsequently returned a two-count indictment against Patterson and Stephens. Count I charged the two men with the substantive count of possessing with the intent to distribute marijuana on July 2, 1987. Count II charged that between June 28 and July 2, 1987, the two had conspired with each other and with unknown individuals to possess with the intent to distribute marijuana. Pursuant to a plea agreement, Patterson pled guilty to the substantive possession offense (Count I), and the district court dismissed the conspiracy count (Count II) upon the government's motion. The court sentenced Patterson to a reduced sentence within the terms of the plea agreement.

Patterson contends that because the government's prosecution for the July 2, 1987 incident placed him in jeopardy with respect to both the substantive offense and the conspiracy charge, his 1987 guilty plea precludes his present conviction for the five-year conspiracy that included overt acts done on and before July 2, 1987.

In *United States v. Felix*, — U.S. —, — – —, 112 S.Ct. 1377, 1384–85, 118 L.Ed.2d 25 (1992), the Supreme Court reaffirmed the rule that "a substantive crime, and a conspiracy to commit that crime, are not the 'same offense' for double jeopardy purposes." Thus, in *Felix*, the Double Jeopardy Clause did not bar Felix's conviction for conspiracy to manufacture and distribute methamphetamine, even though the indictment charging the conspiracy included two overt acts for which he had previously been prosecuted. *Id.* — U.S. at —, 112 S.Ct. at 1383. We have likewise recognized the unique nature of conspiracy offenses under the Double Jeopardy Clause. *See, e.g., United States v. Thomas,* 971 F.2d 147, 149 (8th Cir.1992) (upholding convictions for both con-

spiracy to possess cocaine and aiding and abetting the possession of cocaine); *United States v. Boykins,* 966 F.2d 1240, 1245 (8th Cir.1992) (holding that the Double Jeopardy Clause allows a defendant to be charged and tried for both attempt and conspiracy under 21 U.S.C. § 846).

In light of *Felix* and our precedents, Patterson's argument must fail. Even if we were to accept his claim that the conspiracy charged in the 1987 indictment is identical in scope and time to the one that is charged in the present indictment, which we do not, he was placed in jeopardy in 1987 only for the substantive offense. The conspiracy charge was dismissed without any jury ever being sworn or any evidence ever being presented. Thus, jeopardy never attached to the 1987 conspiracy charge. *See Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (jeopardy attaches in jury trial when jury is empaneled and sworn and in nonjury trial when court begins to hear evidence); *United States v. Deitz,* 991 F.2d 443, 446 (1993) (same).

Patterson might be entitled to some relief, nonetheless, if he could show that the government's present prosecution violated the terms of his 1987 plea agreement. *See Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971); *see also United States v. Nevils,* 897 F.2d 300, 309 (8th Cir.), *cert. denied sub nom. Braddock v. United States,* 498 U.S. 844, 111 S.Ct. 125, 112 L.Ed.2d 93 (1990). Patterson has failed to show, however, that the government agreed in the 1987 plea agreement to forego its right to prosecute him for his involvement in a continuing conspiracy that eventually spanned five years. Accordingly, we affirm his conviction.

### IV.

Miller and Patterson also appeal their sentences. Miller challenges the district court's three-level enhancement under U.S.S.G. § 3B1.1(b) for being a manager or supervisor in a criminal activity that involved five or more persons or was otherwise extensive.

"We will reverse a [district court's] determination of a defendant's role in crimi-

nal activity only if it is clearly erroneous." *United States v. Schwarck*, 961 F.2d 121, 123 (8th Cir.1992). Under this standard, Miller's argument is nearly frivolous. Based on ample evidence introduced at trial, the district court found that Miller had recruited individuals for the conspiracy, had advanced money to others for marijuana purchases, had advanced money with his partners to obtain legal counsel for drivers of marijuana loads when they were arrested, and had received a commission for providing contacts to sources of marijuana.

■ Finally, both Miller and Patterson challenge the district court's imposition of fines of $100,000 and $200,000, respectively. "When reviewing sentences imposed by the district court, we accept the court's findings of fact unless clearly erroneous and give due deference to the court's application of the guidelines." *United States v. O'Meara*, 895 F.2d 1216, 1220 (8th Cir.), *cert. denied*, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *see* 18 U.S.C. § 3742(e). In the context of the imposition of fines, we have held that the district court must make findings on the record that demonstrate that it considered the seven factors set forth in U.S.S.G. § 5E1.2(e). *United States v. Walker*, 900 F.2d 1201, 1206 (8th Cir.1990) (remanding for resentencing where district court made no finding regarding defendant's ability to pay the fine imposed).

We find that the district court's statement of its reasons for imposing the fines in this case sufficiently demonstrates that it considered the section 5E1.2(e) factors. Unlike the situation in *Walker*, where the district court appeared to base its fine only on the nature of the defendant's "reprehensible conduct," 900 F.2d at 1206, here the district court found on the record that during this long-running conspiracy Miller and Patterson had reaped large profits which remained unaccounted. We cannot say that this finding is clearly erroneous, because trial testimony showed that the defendants had earned hundreds of thousands of dollars from their involvement in distributing marijuana. Although the defendants reported to the probation officer that they currently had only a few thousand dollars in assets, we conclude

that the district court was justified in disregarding the presentence report, which was based on the defendant's self-report, where the evidence at trial showed otherwise. The district court's factual finding of substantial unreported assets satisfies us that it considered the defendants' ability to pay the fines imposed and the burden which the fines would place on the defendants and their dependents. *See United States v. Allen*, 886 F.2d 143, 146 (8th Cir.1989); U.S.S.G. § 5E1.2, comment. (n. 6) (sentencing court may impose larger fine where evidence shows that defendant failed to disclose assets). The fines imposed by the district court were within the appropriate guidelines range and are therefore affirmed.

The judgment of the district court is affirmed in all respects.