# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1511

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * Appeal from the United States |
| | * District Court for the |
| v. | * District of Nebraska. |
| | * |
| Larry D. Gladfelter, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: October 21, 1998

Filed: February 22, 1999

_____

Before McMILLIAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Larry D. Gladfelter was convicted of robbery and carjacking under 18 U.S.C. §§ 2111 and 2119, respectively, based upon evidence that he had stolen a money pouch belonging to Lori Scholz and fled in her vehicle. He appeals his convictions, claiming the district court[1] erred in comments in the presence of the jury, in denying a motion for mistrial based upon an error in refreshing a witness' recollection with a cellular phone bill, in admitting his photograph, in imposing sentence and a fine, and

_____

[1]The Honorable William G. Cambridge, Chief Judge, United States District Court for the District of Nebraska.

in other respects.  We affirm.

Lori Scholz drove from her home in Hampton Bays, New York to Rapid City, South Dakota in her Chevy Blazer to bring donations of clothing to the Pine Ridge Indian Reservation.  Shortly after arriving, she met Gladfelter, who introduced himself as Larry Grant, and Enoch Cooper.  Scholz left Rapid City on August 14, 1997, accompanied by Gladfelter and Cooper.  Scholz believed Gladfelter could help her in soliciting charitable donations of clothing in New York.  On the way to New York, Gladfelter suggested that they go to the Omaha Indian Reservation and attend the tribe's powwow.  They drove to Macy, Nebraska and stayed at the powwow until six in the evening.

After the powwow, Cooper drove Scholz, Gladfelter, and Gladfelter's nephew, Chris Grant, to the tribe's casino where Scholz withdrew $160 in cash from an ATM. She placed the cash in the pouch she wore around her waist.

On the return trip from the casino to Macy, Gladfelter became angry when Scholz refused to buy a trinket for Gladfelter's son.  Gladfelter cursed Scholz, pulled her hair, and threatened her.  As the Blazer approached a cross roads with one road leading to the powwow grounds and the other leading to Big Elk Park, Gladfelter directed Cooper to turn in the direction of Big Elk Park.  Scholz pleaded, to no avail, that Cooper turn the Blazer around.

Big Elk Park adjoins the Missouri River. The park was empty, and Cooper drove the Blazer down a dirt road that ran parallel to the river.  When the Blazer stopped, Scholz, fearing for her life, jumped out.  Gladfelter pursued her, tackled her, and pinned her to the ground.  He then repeatedly struck the ground with her knife, coming dangerously close to her head, and cut the money pouch from her person. After dragging Scholz on the ground and throwing her into the river, Gladfelter returned to the Blazer with the money pouch and the knife.  Gladfelter, Cooper, and

Grant then fled in Scholz's Blazer to Omaha.

Scholz and Grant told the authorities of the events, and ultimately, the Omaha police arrested Gladfelter.

Gladfelter was tried and convicted of robbery and carjacking. The district court sentenced him to 264 months of incarceration and imposed a fine of $25,318.41, $7,818.41 of which was for the cost of supervised release, and a restitution order of $2,034.43.

Gladfelter appeals, arguing that during trial the district court erred by making prejudicial statements in the presence of the jury during Gladfelter's opening statement, failing to grant a motion for mistrial because evidence of a telephone bill used to refresh a witness' recollection was presented to the jury, admitting an irrelevant photo of the defendant, and depriving him of a fair trial because of the cumulative effect of the alleged errors. He also contends that the district court erred by fining him an excessive amount without following the proper procedures and that his consecutive sentences under 18 U.S.C. §§ 2111[2] and 2119[3] violate the Double Jeopardy Clause.

----

[2]18 U.S.C. § 2111 (1994) states, "Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years."

[3]18 U.S.C. § 2119 (1994) states:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall-- (1) be fined under this title or imprisoned not more than 15 years, or both . . . .

## I.

During his opening statement, Gladfelter's attorney made argumentative statements. In instructing him not to argue, the district judge stated, "Let's hear what evidence you're going to present." Gladfelter contends this comment led the jury to believe that he had the burden of producing evidence during trial. Thus, he contends his constitutional right of due process was violated. We are unpersuaded.

We review a claimed due process violation de novo. See United States v. Brown, 921 F.2d 785, 789 (8th Cir. 1990). We are troubled by the district judge, in the presence of the jury, stating, "Let's hear what evidence you're going to present." The district judge, however, never explicitly stated that Gladfelter had a burden of production, and he made the comments while directing Gladfelter's attorney not to argue, an activity well within the discretion of the district court. See United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), cert. denied, 469 U.S. 1189 (1985). Further, the district judge's comments must be viewed in context. See United States v. Neumann, 887 F.2d 880, 883 (8th Cir. 1989) (en banc), cert. denied, 495 U.S. 949 (1990). Before opening statements, the court specifically instructed the jury that Gladfelter need not prove "anything" and that the government must prove beyond a reasonable doubt that Gladfelter was guilty. The final jury instructions indicated that Gladfelter had no burden to prove his innocence. We cannot conclude that the trial judge's comment, made in the context of disciplining Gladfelter's attorney for improper argument, denied Gladfelter due process. Cf. Williams v. Groose, 77 F.3d 259, 262 (8th Cir. 1996) (prosecutor's comments regarding burden of proof did not constitute a due process violation).

## II.

Gladfelter next contends that evidence of Scholz's cellular telephone bill was impermissibly presented to the jury. The prosecutor attempted to refresh Gladfelter's mother's recollection as to the time Gladfelter called her by showing her Scholz's

cellular telephone bill.  However, rather than merely showing the witness the document, the prosecutor described the contents of the document by stating that it was Scholz's cellular telephone bill.  This evidence was not authenticated and was hearsay.  Gladfelter contends that the district court should have granted his motion for mistrial based on the jury's learning of the contents of the document.  We review the denial of a mistrial motion for an abuse of discretion.   See United States v. Culver, 929 F.2d 389, 391 (8th Cir. 1991).

Immediately after the prosecutor described the bill used to refresh the witness' memory, the district court sustained Gladfelter's objection and  instructed the jurors to disregard the prosecutor's comments regarding it. Thus, the district court's decision to deny the motion for mistrial was not an abuse of discretion. Cf. United States v. Boles, 684 F.2d 534, 536 (8th Cir. 1982) (holding no abuse of discretion in denying motion for mistrial when objection to prosecutor's inflammatory comment was sustained and jury was instructed to disregard).  Furthermore, we are unpersuaded by Gladfelter's claim that the prosecutor's comment was prejudicial, as the claim relies upon the theory that there were no other links between Scholz's property and him, and that the evidence showed that Cooper actually committed the crimes.  Plenty of evidence showed that Gladfelter committed the crimes:  Scholz testified that it was Gladfelter who tackled her and threatened her with the knife; Grant, Gladfelter's nephew, testified that Gladfelter returned to the Blazer with Scholz's money pouch and knife, and that Gladfelter, Cooper, and he fled in Scholz's Blazer to Omaha; the Blazer was spotted in Gladfelter's mother's neighborhood while Cooper was in F.B.I. custody, and it was recovered just six blocks from Gladfelter's mother's house.  Even if there were error, it was harmless.[4]  See Lake v. United States, 302 F.2d 452, 456

---

[4]Intertwined with Gladfelter's claim that the telephone record was improperly presented to the jury is a claim that the prosecution failed to comply with the discovery provisions of the Federal Rules of Criminal Procedure.  The defendant must show an abuse of discretion and prejudice to obtain reversal on a discovery violation. See United States v. Longie, 984 F.2d  955, 958 (8th Cir. 1993).  Gladfelter has

(8th Cir. 1962) (alleged error in allowing refreshment of memory was harmless when testimony was corroborated by other government witnesses).

## III.

Gladfelter contends the district court erred by allowing the United States to admit a photocopy of a picture of Gladfelter, together with five other men, into evidence. The picture was taken during a police booking of Gladfelter. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. We review the district court's admission of the picture for an abuse of discretion. See United States v. Harbin, 585 F.2d 904, 907-08 (8th Cir. 1978).

The focus of Gladfelter's argument is that the picture was highly prejudicial because it invited the jury to use bad character reasoning in judging his guilt. However, the type of picture at issue here--a frontal photo that has been redacted so as to remove the indication that it was taken during a police booking--does not impermissibly put the defendant's character in question. See Harbin, 585 F.2d at 908. Thus, we cannot conclude the district court abused its discretion by admitting it.

---

shown neither prejudice nor an abuse of discretion.

## IV.

Gladfelter next contends that the errors alleged above combined with the district court's hostility to defense counsel had a cumulative effect which deprived him of his constitutional rights. We will not reverse based upon the cumulative effect of errors unless there is substantial prejudice to the defendant, see United States v. Steffen, 641 F.2d 591, 598 (8th Cir.), cert. denied, 452 U.S. 943 (1981), and we have declined to apply the doctrine when the evidentiary rulings are within the trial court's discretion, see Kostelec v. State Farm Fire and Cas. Co., 64 F.3d 1220, 1230 (8th Cir. 1995). As we indicated above, two of the rulings Gladfelter complains of were within the trial court's discretion. Further, we see no substantial prejudice on this record. The jury was properly instructed as to the burden of proof, and most of the exchange between defense counsel and the trial judge occurred outside the presence of the jury. Ample evidence supported the convictions. There was no deprivation of Gladfelter's constitutional rights.

## V.

Gladfelter contends that the district judge fined him without making specific findings as required by the guidelines and contends that the fine is excessive. Gladfelter did not object to the district judge's actions at the sentencing hearing. Thus, we cannot reverse the district court unless its actions are plain error. See Fed. R. Crim. P. 52(b); United States v. Griggs, 71 F.3d 276, 279 (8th Cir. 1995). The plain error standard requires a demonstration that "there was an error, which is a deviation from an unwaived legal rule; the error was plain, meaning clear or obvious; and the error affected the defendant's substantial rights, which requires a showing that the error was prejudicial and affected the . . . outcome." United States v. Johnson, 12 F.3d 827, 835 (8th Cir.), cert. denied, 511 U.S. 1095 (1994).

The sentencing guidelines state that the district court shall consider some eight factors in determining the amount of the defendant's fine. See USSG § 5E1.2(d). There has been some conflict in our precedent regarding the detail with which the district judge must demonstrate his consideration of the section 5E1.2 factors. We have said that the district judge must make specific findings with regard to each factor. See United States v. Magee, 19 F.3d 417, 425 (8th Cir.), cert. denied, 513 U.S. 939 (1994); United States v. Granados, 962 F.2d 767, 774 (8th Cir. 1992). However, we have also stated that the district judge need not provide specific findings under each of the factors, "but must provide enough information on the record to show that it considered the factors above so that the appellate court can engage in meaningful review." United States v. Berndt, 86 F.3d 803, 808 (8th Cir. 1996). See also United States v. Walker, 900 F.2d 1201, 1206 (8th Cir. 1990) (stating that there must be specific findings showing that the factors were considered).

In this case, the district judge made specific findings with regard to Gladfelter's ability to pay. This has often been the critical factor in our cases. See Walker, 900 F.2d at 1206 (remand required when the district court did not consider the defendant's ability to pay); United States v. Miller, 995 F.2d 865, 869 (8th Cir.) (upholding fine when, unlike in Walker, there were specific findings as to the defendant's ability to pay), cert. denied, 510 U.S. 1018 (1993). Further, the district judge explicitly adopted the facts of the presentence investigation report, which contains the information Gladfelter now claims the district court should have considered. See United States v. Castner, 50 F.3d 1267, 1277 (4th Cir. 1994) (adoption of the presentence investigation report satisfies the district court's obligations). In situations where the district court has made a similar or less thorough analysis of the factors, courts have refused to conclude there was plain error. See United States v. Flores-Sandoval, 94 F.3d 346, 351 (7th Cir. 1996); United States v. Nez, 945 F.2d 341, 342-43 (10th Cir. 1991). On this record, we cannot conclude the district judge committed plain error in his articulation of the basis for the fine.

Gladfelter failed to object below to the amount of the fine, and again we review for plain error. Excluding the portion of the fine imposed for supervised release, the fine is the minimum the guidelines recommend for Gladfelter's offense level. See USSG § 5E1.2(c)(3). Even including the cost of supervised release, the fine was near the bottom of a guideline range that has a minimum of $17,500 and maximum of $175,000. Id. The court's finding was based upon Gladfelter's participation in the federal prison work program, which can give a defendant a means to pay a fine. See United States v. Johnston, 973 F.2d 611, 615 (8th Cir. 1992), cert. denied, 506 U.S. 1068 (1993); United States v. Turner, 975 F.2d 490, 498 (8th Cir. 1992), cert. denied, 506 U.S. 1082 (1993). We see no reason why Gladfelter could not pay this fine in his twenty-two years of incarceration and three years of supervised release. See United States v. Hernandez, 85 F.3d 1023, 1031 (2d Cir. 1996). Indeed, we have upheld a $25,000 fine based on the district court's finding that the defendant would participate in the prison work program. See Turner, 975 F.2d at 498. The imposition of this near minimum fine is not plain error.

## VI.

Finally, Gladfelter argues that charging and consecutively punishing him for carjacking and for robbery violated the Double Jeopardy Clause. We review an alleged violation of the Double Jeopardy Clause de novo. See United States v. Christner, 66 F.3d 922, 927 (8th Cir. 1995). We are unpersuaded by Gladfelter's claim.

In this case, Gladfelter performed separate takings[5] using separate acts of intimidation and violence, and his convictions were predicated upon two statutes

---

[5]The district court specifically instructed the jurors that they were to convict Gladfelter of robbery only if they believed that Gladfelter took money from Scholz.

which each required proof of an element the other did not.[6] We conclude his double jeopardy claim is without merit.  See Christner, 66 F.3d at 929-30 (no double jeopardy violation when defendant committed separate acts in violating two statutory provisions); Blockburger v. United States, 284 U.S. 299, 304 (1932) (no double jeopardy violation when each statute requires proof of fact the other does not); United States v. Hairston, 64 F.3d 491, 495 (9th Cir. 1995) (no double jeopardy violation when defendant convicted upon violations of 18 U.S.C. §§ 2111 and 2114, even though statutes only differ in their jurisdictional element); McGann v. United States, 261 F.2d 956, 957 (4th Cir. 1958) (same except defendant convicted upon violations of 18 U.S.C. §§ 2111 and 2113), cert. denied, 359 U.S. 974 (1959).

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]See notes 2 and 3 supra.

-10-