# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2007

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Wayne Brown, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: October 8, 2002

Filed: January 9, 2003

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Wayne Brown of possessing counterfeit currency in violation of 18 U.S.C. § 472. Brown appeals, arguing the district court[1] abused its discretion in overruling his hearsay objection to testimony by a Secret Service agent based upon the agency's database for tracking counterfeit currency, and clearly erred in imposing a two-level enhancement under U.S.S.G. § 3B1.1(c) for Mr. Brown's role as an organizer of the criminal activity. We affirm.

---

[1]The Honorable Ronald E. Longstaff, Chief Judge of the United States District Court for the Southern District of Iowa.

# I.

At trial, Eric Johnson, an acquaintance of Mr. Brown, testified that he was working as a clerk at a T J Maxx store in Des Moines, Iowa in late November 2000. Brown displayed a roll of counterfeit bills at a local night club, said he had obtained the bills in Detroit, Michigan, and asked Johnson if Brown could pass some of the bills at Johnson's checkout station at T J Maxx. About a week later, Brown appeared at T J Maxx and passed counterfeit bills through Johnson's station. Brown later gave Johnson two counterfeit $50 bills and some clothing. Courtney Steverson testified that Brown gave her a counterfeit $50 bill to pay for a round of drinks while she was working as a cocktail waitress at the SuperToad lounge in Des Moines.

The government's final witness was Tony Every, a special agent of the United States Secret Service. Every identified four counterfeit $20 and $50 bills that T J Maxx had deposited with its bank, and three counterfeit bills seized by local police at the SuperToad lounge which bore serial numbers identical to three of the bills deposited by T J Maxx. Over defense counsel's hearsay objection, Every then testified that bills bearing those same serial numbers had also appeared in the Detroit area and in other parts of Iowa in early November 2000. The district court ruled that testimony limited "to the fact that the bills had been located in those locations" was admissible under the business records exception to the hearsay rule. See FED. R. EVID. 803(6).

# II.

Brown first contends that the district court abused its discretion in allowing Agent Every to testify that bills bearing the same serial numbers had appeared in Detroit at the time in question, which prejudiced Brown because it tended to corroborate a portion of Johnson's incriminating testimony. Every testified that he obtained this information by accessing a Secret Service computerized database. Each

bill or note that comes into the agency's possession is assigned a unique number. A data entry employee then enters into the database the bill's denomination and serial number, and the date and location the agency obtained it. Local Secret Service field agents routinely access this data to determine whether the serial number of a bill they are investigating has previously appeared elsewhere in the country.

Brown argues that testimony regarding what Every learned from this database was inadmissible hearsay because the data does not fall within the public records exception to the hearsay rule. The public records exception provides in relevant part that the following evidence is not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . . .

FED. R. EVID. 803(8)(B). Brown argues that the Secret Service database does not qualify for this exception because it reflects "matters observed by police officers and other law enforcement personnel."

In United States v. Enterline, 894 F.2d 287 (8th Cir. 1990), we upheld the admission of an F.B.I. agent's testimony that certain motor vehicles appeared on a law enforcement agency's computer report of vehicles reported as stolen. We held that the data in this report was admissible under Rule 803(8)(B), despite the Rule's exclusion of matters observed by law enforcement personnel. We distinguished this motor vehicle report, which merely recorded the identification numbers of vehicles *reported* stolen to the police, from "matters observed by the police at the scene of the crime [which] are potentially unreliable since they are made in an adversary setting, and are often subjective evaluations of whether a crime was committed." 894 F.2d at 290. Similarly, in United States v. Smith, 973 F.2d 603, 605 (8th Cir. 1992), we

upheld the admission of police department computer printouts reflecting reported robberies, and in United States v. Johnson, 722 F.2d 407, 410 (8th Cir. 1983), we upheld the admissibility of a firearm serial number reported to the Bureau of Alcohol, Tobacco and Firearms by the manufacturer. See also United States v. Orozco, 590 F.2d 789, 793-94 (9th Cir. 1979) (upholding admission of Treasury Department data card reporting the license plate number of a vehicle crossing the United States border with Mexico because this is objective data recorded in a non-adversarial setting).

We conclude that the district court's ruling was consistent with these prior cases. Though the data contained in the Secret Service database is initially gathered by law enforcement officials, and very likely during the course of an investigation, the data is routinely entered by computer data entry personnel. Significantly, Agent Every's testimony was limited to objective information in the database that was not collected in anticipation of Brown's trial -- the fact that bills of certain denominations bearing specific serial numbers came into the agency's possession at specific dates and locations. Agent Every's testimony did not include information that might have reflected more subjective opinions of law enforcement investigators, such as whether the bills obtained at these other locations were "counterfeit," or whether they had been unlawfully "passed." In these circumstances, the district court did not abuse its substantial evidentiary discretion when it overruled Brown's objection to this testimony. See Smith, 973 F.2d at 605 (standard of review).[2]

## III.

At sentencing, the district court found that Brown's involvement with Eric Johnson made Brown "an organizer, leader or supervisor" of the criminal activity within the meaning of U.S.S.G. § 3B1.1(c), warranting a two-level enhancement. To

---

[2]We need not consider whether this testimony was also admissible under the business records exception to the hearsay rule. See Orozco, 590 F.2d at 794 n.2.

impose an enhancement for a defendant's role in the offense, "a district court must find at a minimum that the defendant directed or procured the aid of underlings." United States v. Encee, 256 F.3d 852, 854 (8th Cir. 2001). Relying upon United States v. Rowley, 975 F.2d 1357, 1364 (8th Cir. 1992), Brown argues that the district court clearly erred in imposing the enhancement because Brown did no more than procure Johnson's "passive acquiescence" in the wrongdoing and did not sufficiently control Johnson to warrant the organizer enhancement.

Even if Brown did not control Johnson's actions in accepting the counterfeit bills as a T J Maxx clerk, we do not require proof of control "so long as the criminal activity involves more than one participant and the defendant played a coordinating or organizing role." United States v. Mayer, 130 F.3d 338, 340 (8th Cir. 1997) (quotation omitted). Here, Brown recruited Johnson's assistance in advance and then compensated Johnson after he accepted the counterfeit bills at his T J Maxx station. The district court did not clearly err in finding that Brown's involvement with Johnson warranted imposing the two-level enhancement for organizing the criminal activity. See Encee, 256 F.3d at 854 (standard of review).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.